WILLIAM W. GROWS *vs.* MAINE CENTRAL RAILROAD COMPANY.

Cumberland. Opinion April 24, 1879.

*Negligence. Pleading. Waiver. Expression of opinion.*

The plaintiff, when one hundred feet from a railroad crossing, attempted to pass over it in front of the defendants' passenger train, which he saw coming thirty rods distant; *Held*, that he was guilty of contributory negligence, and could not recover for injuries caused by collision with the train.

An allegation that the plaintiff could not secure his safety in any other way than urging his horse forward to pass over the crossing before the arrival of the train, is not materially different, in a legal sense, from the allegation that he believed it impossible to control his horse.

If a presiding justice inadvertently misstates a fact in evidence, the counsel should, at the time, call his attention to it, in order that it may be then corrected; if he do not, he will waive exception thereto.

An inadvertent misstatement by the presiding justice is not the "expression of an opinion upon an issue of fact arising in the case," within the meaning of Stat. 1874, c. 212.

ON MOTION AND EXCEPTIONS.

CASE, for personal injuries received at a railroad crossing. The action was before the court on demurrer. See 67 Maine, 100.

The allegation relating to due care in the original declaration was: "And said plaintiff, knowing that he could not turn his said team in said lane, and believing that he could get his said team over and across said crossing before said train would reach the same, and that he could secure his safety in no other way, and, supposing that said train was approaching at an ordinary rate of speed, urged his said horse forward, and used his utmost exertions

to get his said team over said crossing before said train should arrive at the same, which he could well have done if said train had been moving at an ordinary rate of speed."

And in the amended declaration: "And said plaintiff, knowing that he could not turn his said team in said lane, and knowing that he had ample time to pass over said crossing before said train would reach the same, if said train was moving at an ordinary rate of speed, as he supposed it then was, and believing that it would be impossible for him to stop his said horse when thrown into a sudden fright, as he was, by the said train, which was then approaching almost in his rear, he allowed him to dash forward without any check, except so much as was necessary to guide him and prevent his overturning said wagon, and used his utmost exertions to get his said team over said crossing before said train should arrive at the same, which he could well have done if said train had been moving at an ordinary rate of· speed.

The plaintiff submitted certain requests for instruction; which the view taken by the court renders it needless to report.

Upon the evidence in the case it was contended in argument by the plaintiff's counsel that the engineer, under the peculiar circumstances of the case, when he first saw the plaintiff in the way moving towards the crossing, had no right to assume that the plaintiff had seen the train or even knew that it was approaching, and that the law required him to use due care to avoid injuring the plaintiff after he saw him in peril; and that the fact that the engineer did not then sound the whistle, or give the plaintiff any warning, taken in connection with the fact that no statute signals had previously been given, and that the engineer, after he saw the plaintiff, kept no lookout to watch him, and allowed his train to continue on at the same high rate of speed as before, was a fact to be considered by the jury in support of the allegation that he ran his train recklessly, after he saw the plaintiff in peril.

Upon this point the presiding justice charged the jury in the following language, in which it is claimed that he made an erroneous statement as to the evidence upon a material fact, and expressed an opinion upon issues of fact arising in the case in disregard of chapter 212 of the public laws, 1874:

" Upon this branch of the case, I do not perceive any necessity whatever for me to consider the question whether this was a road where the statute signals were required or not. There is no evidence in the case that the conductor or the engineer saw the plaintiff sooner than the plaintiff saw the train—about thirty-eight rods distant as they were coming out of the cut, as I recollect it, is the testimony when each saw the other. From the time the plaintiff saw the train he had all the notice the statute signals would give him, and, as was said in the opinion of the law court, 'vision was better than hearing.' The object of the statute signals was to give the plaintiff notice that the train was approaching, and if as soon as the engineer saw the plaintiff, the plaintiff saw the train, then so far as this averment in the writ is concerned, that the engineer ran recklessly after seeing him, it is entirely immaterial whether the statute signals were given or not. The averment of the plaintiff upon this branch of the case is that the engineer recklessly ran his train after he saw the plaintiff. The plaintiff saw the engineer as soon as the engineer saw him, so that it does not tend to sustain or disprove this allegation to show that the statute signals were not given. If they were required before the engineer saw him it does not tend to sustain this allegation that the engineer recklessly ran his train after he saw him ; and whether they were given after the engineer saw him or not is immaterial because the plaintiff had seen the train, and the ringing of the bell or sounding of the whistle would be no more warning to him than seeing the train itself."

The verdict was for the defendants, and the plaintiff alleged exceptions and also filed a motion to set aside the verdict as against the weight of evidence and against law.

*F. Adams & A. W. Coombs,* for the plaintiff, filed a very elaborate argument, citing : Shear. & Redf. Neg., §§ 30, 31. *State* v. *Railroad,* 52 N. H. 557. 1 Hill. Torts, 142. 1 Redf. Rail. 567. Whart. Neg., § 304. *Railroad* v. *McElwell,* 67 Pa. St. 311. *Detroit, etc., R. R.* v. *Van Steinburg,* 17 Mich. 99. 28 Eng. L. & Eq. 48. *Penn. Car. Co.* v. *Bentley,* 66 Pa. St. 30. *Railroad* v. *Stout,* 17 Wall. 657. *Webb* v. *P. & K. R. R.,* 57 Maine, 117. *Hobbs* v. *Eastern R. R.,* 66 Maine, 572. *Lar-*

*rabee* v. *Sewall,* 66 Maine, 376, 380.   Shear. & Redf. Neg., §§ 25, 26, 27, 28 and 33.   R. S., c. 51, § 17.   *Bradley* v. *B. & M. R. R.,* 2 Cush. 539.   *Linfield* v. *Old Colony R. Co.,* 10 Cush. 561.

*J. H. Drummond,* for the defendants.

VIRGIN, J.   When this case was before this court on demurrer, (67 Maine, 100) it was decided that the allegations in the original declaration relating to the plaintiff's attempt to pass over the crossing before the approaching passenger train would not, if proved, sustain the action ; for the reason that, instead of showing the exercise of ordinary care which the law required of him, they disclosed culpable negligence, which must preclude a recovery.

Omitting the preliminary averments, which placed the plaintiff with his horse and lumber wagon about seven rods from the crossing and the train in plain sight, seen by him to be approaching some thirty-eight rods distant, the material allegation is that he " urged his said horse forward, and used his utmost exertions to get his said team over said crossing before said train should arrive at the same," etc.   In the amended count, instead of the averment that he " urged his horse forward," he has substituted the allegation that he " allowed him to dash forward without check." And the allegation that he could secure his safety in no other way, and that he believed it would be impossible to control his horse are not materially different, in a legal sense.   There is no allegation that he attempted to stop his horse or to alight from his wagon. Moreover the plaintiff's own testimony is in accord with his allegations.   He admits that he saw the train coming when he was one hundred feet from the crossing.   To be sure, he says " his horse made a leap into a dead run," and does not pretend that he attempted to stop him, but says repeatedly that he does not know whether he did or not.   But he does testify that he did not attempt to turn around and did not even look at the train after he first saw it.

The presiding justice might well rule, as he did, that there was no material difference, in a legal sense, between the averments in the original and amended counts upon the matter of care on the part of the plaintiff, and that the decision on the demurrer was decisive on this branch of the case.

That instruction being correct, the requested instructions became immaterial.

It is contended that the presiding justice " expressed an opinion upon an issue of fact arising in the case," and that the plaintiff, " being aggrieved thereby," is entitled to a new trial, in accordance with the provisions of St. 1874, c. 212. The expression of opinion was in the charge. The judge, in illustrating a principle of law, said that, so far as he recollected the testimony, " the plaintiff saw the engineer as soon as the engineer saw him." But a mistake of this kind is not such an expression of opinion upon an issue of fact as is contemplated by the statute. If the judge inadvertently misstate a fact, the counsel should at the time call his attention to it, that it may then and there be corrected by reference to the reporter, if necessary. *Bradstreet* v. *Bradstreet*, 64 Maine, 204. *State* v. *Reed*, 62 Maine, 128, 137.

The remaining question was whether, notwithstanding the plaintiff's negligence, the defendants were still liable, for the alleged reason that their engineer, after seeing the actual condition in which he then was, instead of checking the speed of the train, ran recklessly on and thereby caused the injury. In submitting this question to the jury, the presiding justice withdrew from them all consideration of the want of statute signals, as having no tendency to sustain or disprove this issue. We perceive no error in this ruling of which the plaintiff can complain. We take it for granted that other appropriate instructions were given upon this question ; and to those no objection has been made.

The jury found that the defendants were not guilty. We do not readily perceive how they could find otherwise. The testimony of the plaintiff is quite inconsistent with itself.

He testified in substance that the usual gait of his horse, when harnessed to that wagon, was " six or seven miles an hour ; " that when he entered the lane he " trotted along at an ordinary trot, about the same gait he ordinarily went ; " that his horse became frightened, " made a leap into a dead run," and that he " let the horse go." This testimony he gave to satisfy the jury of the truth of his allegations : that his horse, " being thrown into a sudden fright by the said train which was approaching almost in his

rear, was allowed to dash forward without check," etc., and that he " used his utmost exertions to get his said team over said crossing before said train should arrive at the same." And yet he also testified that, by actual measurement, the train was thirty-eight rods distant and he only one hundred feet, when his horse took fright and ran. In other words, the train ran six hundred and twenty-seven feet to his one hundred, or six and twenty-seven hundredths faster. So that, taking it for granted that the speed of the train was, as contended by the plaintiff's counsel, forty miles per hour, the plaintiff's team went 40 divided by 6.27, equal to 6.37 miles per hour, its usual, ordinary rate of speed. And this demonstrated fact corresponds with the testimony of the engine driver.

*Motions and exceptions overruled.*

APPLETON, C. J., WALTON and LIBBEY, JJ., concurred.

BARROWS, J., concurred in the result.